# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALLAN WASONGA ONYANGO,

              Petitioner,

v.

JEFF SESSIONS, ELAINE C. DUKE, RICARDO WONG, and DALE SCHMIDT,

              Respondents.

Case No. 17-CV-1517-JPS

**ORDER**

On November 3, 2017, Allan Wasonga Onyango ("Onyango"), a state prisoner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention in connection with removal proceedings. (Docket #1). As an initial matter, the Court must screen Onyango's motion under Rule 4 of the Rules Governing Section 2254 Proceedings, which requires the Court to promptly examine the motion and dismiss it "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the petitioner is not entitled to relief."[1]

## 1. FACTS AND PROCEDURAL HISTORY

Onyango is a native and citizen of Kenya. He came to the United States in 2006 to attend college in Michigan. In 2010, he was convicted of using a false document and misdemeanor assault. He was taken into

---

[1] Rule 1(b) of those Rules and Civil Local Rule 9(a)(2) give this Court the authority to apply the rules to other habeas corpus cases, including the rule permitting screening of the petition.

custody by U.S. Immigration and Customs Enforcement ("ICE") after his release from custody on those convictions.

Removal proceedings were initiated against Onyango. He did not oppose removal but sought relief therefrom under the Convention Against Torture. His request was denied at all levels of review. However, rather than being removed, Onyango was released from ICE custody under an order of supervision in 2012.

Then, on April 17, 2017, ICE issued Onyango a notice of revocation of his release and took him back into custody. He was interviewed on April 27, 2017, after which the reviewing official determined that detention should continue. A written decision continuing his review further was issued on July 26, 2017. The order stated that travel documents required for him to be removed to Kenya had been requested and were "expected."

On October 26, 2017, ICE issued another written decision to continue his detention. Again, the order stated that ICE expected to receive necessary travel documents from the government of Kenya. However, the order did not say whether ICE had actually contacted the Kenyan government about him or whether it had received any information from the Kenyan government about the status of those travel documents.

To Onyango's knowledge, and despite his continued cooperation with efforts to remove him to Kenya—including requesting travel documents from Kenya himself, surrendering his own identification documents, and providing ICE with his fingerprints—the Kenyan government still has not issued travel documents for him, and ICE has given no indication that those documents will be forthcoming in the

reasonably foreseeable future. He remains detained at the Dodge County Detention Center in Juneau, Wisconsin. He requests that the Court order his immediate release from custody and placement on supervision pending his removal.

2. **LEGAL STANDARDS**

An alien ordered removed from this country generally must be removed within ninety days. 8 U.S.C. § 1231(a)(1)(A). This is called the "removal period." *Id.* During that period, the alien must be detained. *Id.* § 1231(a)(2). If not removed within the removal period, the alien is normally to be released under the government's supervision. *Id.* § 1231(a)(3). However, the Attorney General may continue to detain him beyond the removal period if the alien presents a risk to the community or is unlikely to comply with the order of removal. *Id.* § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001), the Supreme Court addressed "whether [the] post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." The Court determined that the latter was the appropriate standard. *Id.* at 689. To find that the statute permitted indefinite detention would, in the Court's view, raise serious due process concerns. *Id.* at 690. Although the text of the statute says nothing about reasonableness, the Court read that limitation into it to avoid a collision with the Constitution. *See id.* at 690–98.

Thus, the Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In such a case, "the alien's release may and should be conditioned on any of the various forms of supervised release that are

appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700. Further, if removal is reasonably foreseeable, "the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Id.* at 700.

To provide clarity to later courts, the Court specified that a presumptively reasonable period of detention for purposes of removal should not exceed six months. *Id.* at 701. Once that period expires, and once the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* The alien need not show "the absence of any prospect of removal—no matter how unlikely or unforeseeable," but merely that removal is not reasonably foreseeable. *Id.* at 702. Similarly, the government cannot rest solely on assertions of good-faith efforts to secure removal. *Id.* As the period of post-removal confinement grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. However, the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

3. **ANALYSIS**

In this case, the Court cannot say that Onyango's petition is plainly without merit. The presumptively reasonable period of detention elapsed over a month ago. Further, based on Onyango's representations that he is fully cooperative in the effort to effect his removal, and that the removal

does not appear to be moving forward in any meaningful fashion, the Court finds—as a preliminary matter of screening only—that he has proffered sufficiently good reasons to believe that his removal is not reasonably foreseeable. Under *Zadvydas*, the burden must now rest with the government to justify Onyango's continued detention. *See Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) (the burden shifts to the government "if the alien can offer any legitimate argument as to why there is no significant likelihood of removal").[2] Consequently, the Court will order Schmidt to respond to the petition and will set a briefing schedule. *See* Rule 4(b) of the Rules Governing Section 2254 Cases.[3]

Although Onyango's claims may proceed, the Court must dismiss certain of the respondents as improvidently named. A Section 2241 habeas petition is properly lodged against "the person who has custody" over the petitioner. 28 U.S.C. § 2242; *id.* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). In "core" habeas cases—those in which the prisoner challenges his present physical confinement—this will be the warden of the prison where he is being held. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The Supreme Court instructs that in such cases, the respondent should "not [be] the

---

[2]Further, it appears that Onyango has received all the administrative review to which he is entitled under Immigration and Naturalization Service ("INS") regulations on the matter. *See* 8 C.F.R. § 241.4. Thus, on the Court's preliminary review, it does not plainly appear that he has failed to exhaust his administrative remedies. *See Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014). The Court will leave it to the government to argue otherwise.

[3]Section 2243 sets out a specific timeline for Section 2241 petitions, but the court's prerogative over scheduling embodied in Rule 4 of the Rules Governing Section 2254 Proceedings controls. *Bleitner v. Welborn*, 15 F.3d 652, 653–54 (7th Cir. 1994); *Kramer v. Jenkins*, 108 F.R.D. 429, 432 (N.D. Ill. 1985).

Attorney General or some other remote supervisory official." *Id.*; *see also Kholyavskiy v. Achim*, 443 F.3d 946, 949 (7th Cir. 2006) ("[T]he immediate custodian [is] the individual having 'day-to-day control' over the facility in which a prisoner is housed.").

Onyango's case is clearly one asserting that his present physical confinement is unlawful, and so the only proper respondent is Dale Schmidt ("Schmidt"), the Dodge County Sherriff and the day-to-day overseer of the Dodge County Detention Center. The other named respondents will be dismissed for the present, but if Schmidt reports that there is some obstacle to granting complete relief because of a failure to name some other respondent, the Court will entertain a request to join that person.

Accordingly,

**IT IS ORDERED** that Respondents Jeff Sessions, Elaine C. Duke, and Ricardo Wong be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall effect service of the petition and this Order upon Respondent pursuant to Rule 4 of the Rules Governing Section 2254 Cases; and

**IT IS FURTHER ORDERED** that the parties shall proceed in accordance with the following schedule:

1. Within 30 days of entry of this Order, Respondent shall file either an appropriate motion seeking dismissal of this action or answer the petition, complying with Rule 5 of the Rules Governing Section 2254 Cases, and showing cause, if any, why the writ should not issue; and

2. If Respondent files an answer, then the parties should abide by the following briefing schedule:

a. Petitioner shall have 30 days after the filing of Respondent's answer within which to file a brief in support of his petition, providing reasons why the writ of habeas corpus should be issued. Petitioner is reminded that, in accordance with 28 U.S.C. § 2248, unless he disputes allegations made by the respondent in his answer or motion to dismiss, those allegations "shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."

b. Respondent shall file an opposition brief, with reasons why the writ of habeas corpus should not be issued, within 30 days of service of Petitioner's brief, or within 45 days from the date of this order if no brief is filed by Petitioner.

c. Petitioner may then file a reply brief, if he wishes to do so, within 10 days after Respondent has filed a response brief.

3. If Respondent files a motion in lieu of an answer, then the parties should abide by the following briefing schedule:

a. Petitioner shall have 30 days following the filing of Respondent's dispositive motion and accompanying brief within which to file a brief in opposition to that motion.

b. Respondent shall have 15 days following the filing of Petitioner's opposition brief within which to file a reply brief, if any.

Pursuant to Civil Local Rule 7(f), the following page limitations apply: briefs in support of or in opposition to the habeas petition or a dispositive motion filed by Respondent must not exceed thirty pages and reply briefs must not exceed fifteen pages, not counting any caption, cover page, table of contents, table of authorities, and/or signature block.

Because Petitioner's filings will be electronically scanned and entered on the docket upon receipt by the clerk, Petitioner need not mail to counsel for Respondent copies of documents sent to the Court.

Dated at Milwaukee, Wisconsin, this 17th day of November, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge